Weygandt, C. J.
The railroad company’s claim for indemnity is based on a series of four agreements executed between the railroad company and the blanket company in the years 1918, 1920, 1921 and 1941.
The precise question is whether the drawbridge here involved is inferentially included in the indemnity provisions of one or more of the four contracts.
Fortunately many features of this controversy are not in dispute.
The facts are conceded and are provided by stipulations.
Counsel are in agreement as to the applicable law. They cite and rely on the unanimous decision of this court in the case of George H. Dingledy Lumber Co. v. *505 Erie Rd. Co., 102 Ohio St., 236, 131 N. E., 723, in which the syllabus reads as follows:
“1. Public policy requires that contracts of indemnity purporting to relieve one from the results of his failure to exercise ordinary care shall be strictly construed, and will not be held to provide such indemnification unless so expressed in clear and unequivocal terms.
“2. Where, in a contract of indemnity, general words are used after specific terms, the general words will be limited in their meaning to things of like kind and nature as those specified.
“3. Such principle of construction should be applied to the contract of indemnity involved in this case, and an undertaking to save harmless from loss, damage or injury ‘by fire or otherwise’ includes only loss, damage or injury arising from fire or causes kindred thereto and does not include injury caused to an employee of the lessee by the negligent operation of the lessor’s locomotive. ’ ’
And in his opinion in that case at page 242, Matthias, J., makes the following comment:
“Public policy clearly requires that such contracts shall be restricted rather than extended. It is a fundamental rule in the construction of contracts of indemnity that such a contract shall not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in clear and unequivocal terms. (14 Ruling Case Law, 47.) The liability of such indemnitee is regarded to be so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the liability unless the contract puts it beyond doubt by express stipulation. It cannot be established by. inference from words of general import.”
Then on page 245 appears further comment as follows :
*506 “It is clear that the parties did intend that the indemnification agreement should cover loss or damage by fire. That purpose is plainly expressed by the contract. It is not clear what other causes of loss or damage were contemplated. The principle of construction known as ejusdem generis therefore should be applied in determining what is included in the term ‘by fire or otherwise.’ The application of that rule would require that where an enumeration of specific things is followed by some more general word or phrase, such general word or phrase should be held to include only things of the same general nature as those specified. If that rule of construction be applicable here, then the indemnity provision would cover only such loss, damage or injury as was occasioned by fire or kindred causes, such as smoke, water, etc.”
In the instant case the vigorous conflict between the parties comes in the task of applying the agreed law to the agreed facts. The railroad company insists that the language of the indemnity provisions is clear and unequivocal; the blanket company contends that it is not. But the parties agree that the rule of ejusdem generis should be applied.
Although four contracts are here involved and although they were prepared by the railroad company itself, the drawbridge which caused the plaintiff’s injuries is not mentioned either in any contract or in the plat attached thereto.
In the 1918 contract the blanket company was given the right to use the sidetrack and also the right to construct “a shed or covering over and across said sidetrack and connecting the two buildings” of the blanket company. The agreement contained the further provision that the blanket company “agrees not to erect, or allow to be erected, any building, structure or fixture of any kind in dangerous proximity to said track, and will protect, indemnify and save harmless *507 the first party against loss, damage and expense in consequence of injury to person or property by reason of such structure or fixture.”
By the terms of the 1920 contract the blanket company was granted the right to erect an unloading machine adjacent to the sidetrack. The railroad company relies strongly on the indemnity provisions of this agreement reading as follows:
‘ ‘ The second party agrees to indemnify, protect and save harmless the first party, its successors and assigns, from all liens, actions, costs, loss and damage growing out of or resulting from injuries to persons or damage to property which may arise or result from the location, maintenance and operation of the said unloading machine and appurtenances or other buildings, structures or fixtures, by the said second party or any other person or persons in its behalf, regardless of whether or not the negligence of the servants, agents and employees of the first party caused or contributed to such injury to persons or damage to property.” (Italics supplied.)

No unloading machine ever was erected.

The 1921 contract relates to an additional sidetrack.
However, the 1941 contract expressly superseded the 1921 agreement and provided for the construction of an additional sidetrack. But in this fourth contract it was expressly provided that the agreements of 1918 and 1920 were not superseded, and the 1920 instrument was described as “ covering erection, operation and maintenance of an overhead unloading machine.” (Italics supplied.) It should be noted that although the drawbridge was constructed in 1939 and hence had been in existence two years at the time the 1941 contract was executed, there still was no mention of the drawbridge in either the agreement or the plat thereto attached.
*508 Under these circumstances can it properly be said that the indemnity provisions here involved meet the required test of being “clear and unequivocal”? The fact that the two lower courts were of different Mews is some indication of a lack of clarity in the language. In any event, the provisions by which the railroad company seeks to relieve itself from the consequences of its own negligence must be construed strictly, and there is no presumption in its favor.
Furthermore, applying the rule of ejusdem generis, it is apparent that the 1920 contract relates specifically to an unloading machine and that the general terms “appurtenances or other buildings, structures or fixtures ’ ’ refer only to things related to an unloading machine. Such a machine never was erected.
Consequently the Court of Appeals was not in error in holding that the blanket company is not obligated to indemnify the railroad company for any amount the latter may be required to pay by reason of its own negligence.

Judgment affirmed.

Stewart, Middleton and Matthias, JJ., concur.
Zimmerman, Taet and Hart, JJ., dissent.